**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 04 2012, 8:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN P. WILSON**
Wilson & Wilson
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRIAN A. MCKINNEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 41A05-1203-CR-126 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JOHNSON CIRCUIT COURT
The Honorable K. Mark Loyd, Judge
Cause No. 41C01-1109-FC-79

**December 4, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

At the conclusion of a jury trial, Brian A. McKinney was convicted of Robbery,[1] a class C felony, Escape,[2] a class C felony, and Residential Entry,[3] a class D felony. On appeal, McKinney challenges the sufficiency of the evidence, claiming that he was not properly identified as the robber, that his entry into an individual's apartment was not illegal because he thought the residence had been abandoned, and that the evidence failed to show that he intentionally fled from lawful detention.

When considering the facts most favorable to the judgment, it is apparent that McKinney is requesting us to reweigh the evidence, which we will not do. We conclude that the evidence was sufficient to support McKinney's convictions.

FACTS

On September 12, 2011, at approximately 6:00 p.m., Jay Layton was working at the Olive Garden restaurant in Greenwood. An individual, later identified as McKinney, approached Layton and demanded all of the money from a cash register and threatened to "blow [Layton's] brains out." Tr. p. 40-41. After noticing a dark object in McKinney's hand, Layton feared for his life and handed over all the money in the cash drawer.

McKinney then fled the restaurant, and Layton called the police. Witnesses reported that McKinney was running toward the Westminster Apartment Complex (Westminster) just west of the Olive Garden. Greenwood Police Officer Doug Roller

---

[1] Ind. Code § 35-42-5-1(1).

[2] Ind. Code § 35-44-3-5(a).

[3] Ind. Code § 35-43-2-1.5.

was on his way to the scene and a police radio dispatch described "two white males, tall, thin, with short hair, one wearing a red hooded sweatshirt . . . one with red shorts and one with blue jean shorts" as the perpetrators of the robbery. Tr. p. 253, 334-35.

Other officers on patrol also received information, indicating that the Olive Garden robber had fled to Westminster. When the officers arrived at the complex, Officer Jay Arnold observed a male "furtively" looking at them through the window of one of the apartment buildings. Id. at 138. Sergeant Jeff McCorkle entered the apartment building and was in the first-floor entryway when McKinney and his brother, Brandon, walked down the stairs. McKinney was wearing a white tank-top and loose denim shorts. Sergeant McCorkle escorted the McKinneys outside and explained that he was detaining them because they were suspects in the Olive Garden robbery.

Sergeant McCorkle patted down McKinney and felt what he thought was a wad of money in McKinney's groin area. Officer Roller observed that paper money was hanging out of McKinney's underwear. The officers recovered $409 in cash from McKinney, most of which were in one-dollar and five-dollar bills.

Thereafter, Officer Roller picked up Layton at the Olive Garden and drove him to Westminster. When they arrived, Layton identified McKinney as the robber. McKinney was arrested, handcuffed, and ordered to sit on the curb. While Sergeant McCorkle returned to his vehicle and started to clean it before transporting McKinney to jail, McKinney stood up and started to run away. McKinney ignored Sergeant McCorkle's demands to stop.

3

The officers began searching Westminster for McKinney and several bystanders directed them to one of the apartment buildings. As the officers were checking the building, Joyce Case informed them that she had previously left her apartment with her door unlocked and had just returned to find the door locked. Case had been moving some of her things out of her apartment to another residence and gave the officers permission to enter her apartment through a window. Sergeant James Prior and another officer entered the apartment and found McKinney. Case did not know McKinney and never gave him permission to enter the apartment. McKinney was arrested and transported to jail.

The State charged McKinney with the following offenses:

Count I—Robbery, a class C felony
Count II—Escape, a class C felony
Count III—Residential Entry, a class D felony[4]
Count IV—Residential Entry, a class D felony

At McKinney's jury trial that commenced on November 22, 2011, Layton testified that he made "eye contact" with McKinney during the robbery and had a "clear view of [McKinney's] face." Tr. p. 43. Layton further testified that McKinney was, "without a doubt," the man in the red sweatshirt and denim shorts who robbed him. Id. at 51-56. Layton also testified that around the time of the robbery, a large amount of the currency would have been in low denominations and in rubber bands.

---

[4] This charge involved another apartment where McKinney and his brother had been hiding prior to their apprehension. As indicated below, McKinney was ultimately acquitted of this offense.

4

Mary Marshall, a patron of the Olive Garden, testified that while parking her car in the lot, she saw a man wearing a red sweatshirt walk into the restaurant. Marshall then saw the same man running out of the restaurant with a "wad of money" in his right hand, running toward the back of the building. Tr. p. 104-07, 112. Marshall identified McKinney as the individual who entered and left the Olive Garden wearing a red sweatshirt.

Olive Garden's manager, Carl Ericson, testified that the cash registers would have contained mostly one-dollar and five-dollar bills. Ericson also testified that, when considering the time of day, and in light of the restaurant's accounting practices, McKinney would have stolen less than $509 from Layton's register.

Case testified that in September 2011, she was in the process of moving from her apartment. Although Case did not spend every evening there, she still had "all kinds of stuff" there. Id. at 266-67, 274-75. Case did not give McKinney permission to enter her residence, and Sergeant Prior identified McKinney as the individual he arrested in Case's apartment. The State also introduced $409 seized from McKinney, which consisted of two $100 bills and the remainder in one-dollar and five-dollar bills.

Following the presentation of the evidence, McKinney was convicted of Counts I, II, and IV, and he was acquitted on Count III. At a sentencing hearing that was conducted on February 2, 2012, McKinney was sentenced to eight years on Counts I and II and to three years on Count IV, all to be served concurrently. McKinney now appeals.

5

<u>DISCUSSION AND DECISION</u>

When reviewing sufficiency of the evidence claims, we will not reweigh the evidence or judge the credibility of the witnesses. <u>Jackson v. State</u>, 925 N.E.2d 369, 374-75 (Ind. 2010). We also respect the jury's exclusive province to weigh conflicting evidence. <u>Id.</u> Accordingly, we consider only the probative evidence and reasonable inferences that support the verdict. <u>Id.</u> We will affirm the judgment if the probative evidence and reasonable inferences drawn from the evidence could have permitted a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. <u>Id.</u>

Notwithstanding McKinney's contention that the State failed to prove that he was the robber, the State presented the testimony of two eyewitnesses and overwhelming corroborating evidence identifying McKinney as the perpetrator. Tr. p. 41-56, 104-08, 112-15, 197-200, 211-12, 240, 314-15, 317. This was sufficient evidence to support McKinney's robbery conviction.

While McKinney argues that his conviction for escape must be set aside because he allegedly did not flee from lawful detention, we note that "lawful detention" is defined as an "arrest" or "any other detention for law enforcement purposes." Ind. Code § 35-41-1-18(1), (10). Sergeant McCorkle testified that McKinney had been placed under arrest, and two other police officers corroborated that account. <u>Id.</u> at 144, 153, 179, 240-41, 317. Moreover, McKinney concedes that he was detained "as part of an investigation." Appellant's Br. p. 21. This was sufficient evidence to support McKinney's conviction for escape.

Finally, McKinney argues that the evidence did not support his conviction for residential entry. Indiana Code section 35-43-2-1.5 provides that "A person who knowingly or intentionally breaks and enters the dwelling of another person commits residential entry, a class D felony." A dwelling is defined as "a building, structure, or other enclosed space, permanent or temporary, movable or fixed, that is a person's home or place of lodging." I.C. § 35-41-1-10. In Brown v. State, our Supreme Court held that a structure may be a dwelling even though the occupants are in the process of moving out if they still have a right to occupy the house and their personal items still remain. 580 N.E.2d 329, 330 (Ind. 1991).

At trial, Case testified that she had stayed at the apartment approximately three days before McKinney entered and returned the day before to retrieve some items that she was going to move into her new residence. Tr. p. 275. Case also testified that she had not completely moved out or abandoned the apartment. Id. This was sufficient evidence to support Case's conviction for residential entry.

The judgment of the trial court is affirmed.

RILEY, J., and BARNES, J., concur.